**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF VIRGINIA**
**DANVILLE DIVISION**

| | | |
|---|---|---|
| **RICHARD M. SLACK,** | ) | |
| | ) | |
| | ) | |
| **Plaintiff,** | ) | **Civil Action No.: 4:13-cv-64** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **RAUL ROJAS DA SILVA a/k/a** | ) | **By: Hon. Robert S. Ballou** |
| **HUESLA ROJAS DA SILVA, et al.,** | ) | **United States Magistrate Judge** |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

## AMENDED REPORT AND RECOMMENDATION

The parties have reported to the Court that they settled this personal injury matter, and have requested Court approval of the settlement agreement. The case was referred to me pursuant to 28 U.S.C. § 636 (b)(1)(B) to conduct all necessary proceedings regarding the approval of the parties' settlement and to provide an appropriate report and recommendation.

I held a settlement approval hearing on May 8, 2014. Plaintiff Richard Slack and his wife Maclyn Slack attended the hearing via telephone conference, with plaintiff's counsel present in person. Counsel for defendants also appeared at the hearing via telephone conference. Having reviewed the record and conducted a hearing on the issues, I conclude that the agreed settlement amount of Seven Hundred Forty Thousand and 00/100 Dollars ($740,000.00) represents a full and fair settlement of the underlying matter in consideration of the risk of litigation and the recoverable funds. Further, I conclude that the proposed distribution of the settlement proceeds, as set forth below, and laid out in detail in the Virginia Release and Settlement Agreement (Dkt. No. 41-1), is appropriate. Accordingly, I hereby **REPORT** as follows:

This action arose out of an automobile accident that occurred on September 3, 2013, in Patrick County, Virginia, between a motor vehicle operated by the plaintiff, Mr. Slack, and a tractor trailer. As a result of the accident, Mr. Slack sustained personal injuries, including a traumatic head injury. Mr. Slack was in a coma for several weeks following the accident, and currently continues to receive in-patient care for his head injury. At the hearing, Mr. Slack testified that, although he is far from fully recovered from his injuries, he has made significant progress, and has good reason to believe that he will continue to make additional progress in the future. Mr. Slack's medical expenses related to the accident total over Five Hundred Fifty Thousand Dollars ($550,000.00).

Given the nature of Mr. Slack's injuries and state of recovery, I discussed with him in detail his understanding of the settlement agreement and his ability to handle his money and legal affairs. Mr. Slack confirmed that he understood the legal implications of the proposed settlement agreement, and that it would prevent him from seeking any future recovery against the named defendants. Mr. Slack stated that his wife operates as his power of attorney, but that they talk regularly about how his affairs are handled, and reach joint decisions regarding legal and financial matters. Mr. Slack stated his desire that this settlement be approved. Accordingly, I find that Richard Slack is an adult and is a proper party under applicable Federal and State law to compromise his claim for personal injuries, medical expenses, and other damages arising out of the accident. I further find that Mr. Slack has given reasonable notice of this proceeding to all necessary persons and entities that may be interesting in the approval of the compromise settlement.

Next, plaintiff's counsel detailed the rationale for accepting the settlement amount in this matter. Through discovery and investigation, plaintiff's counsel determined that the only

available insurance coverage related to this accident is the federally-mandated MCS-90 coverage required for all tractor trailers by law, with limits of $750,000.00. See Dkt. Nos. 41-2, 41-3, 41-4. Counsel for the defendants further represented that the named defendants are not financially capable of contributing to the settlement with their own assets. Thus, the settlement amount constitutes only slightly less than the full amount of insurance funds available in this matter. I find that the settlement amount in this case is a fair compromise, in light of the risk of litigation and funds available for recovery.

Counsel for plaintiff requested the Court's approval of his attorney's fee of Seventy Five Thousand and 00/100 Dollars ($75,000.00), and costs of approximately Three Thousand Nine Hundred and 00/100 Dollars ($3,900.00) to be paid out of the settlement proceeds. I find the fees and expenses sought to be reasonable, and recommend that they be approved.

Counsel for plaintiff then set forth for the Court the various liens to be paid from the settlement funds. Specifically, Optum, a Medicare Advantage Organization, asserted a claim for reimbursement, which it has agreed to compromise for the amount of One Hundred Sixty-Five Thousand and 00/100 Dollars ($165,000.00), to be paid directly out of the settlement proceeds. See Dkt. No. 41-5.

Wake Forest Baptist Health asserted a lien against the settlement proceeds, which it has agreed to compromise for the amount of One Thousand and 00/100 Dollars ($1,000.00), which will be paid directly out of the settlement proceeds. See Dkt. No. 41-6.

Medicare is asserting a lien in the amount of Fourteen Thousand Three Hundred Seventy Nine and 20/100 Dollars ($14,379.20) against the settlement proceeds for an indirect medical education payment made to Wake Forest Baptist Health on behalf of Mr. Slack. See Dkt. No. 41-7. Medicare has agreed to reduce and compromise this lien, but the amount of the compromised

lien is not yet known. Counsel for plaintiff will hold the entire $14,379.20 in escrow pending

receipt of the Final Demand Letter from Medicare, at which point the compromised lien will be

paid in full and any balance will be dispersed to Mr. Slack.

The parties further agreed to allocate Fifty Thousand and 00/100 Dollars ($50,000.00) in

a Medicare set aside account, for any potential future medical treatment that Medicare deems

related to this incident. These funds will be deposited into an annuity with Northwestern Life

Insurance Company, for a period of thirteen years, with an annual payment of approximately

Four Thousand Three Hundred Thirty Six and 25/100 Dollars ($4,336.25). See Dkt. No. 41-10.

This amount represents a good faith estimate of future care, treatment and/or expenses based

upon Mr. Slack's age, date of entitlement to Medicare benefits, type and severity of injuries,

prior medical expenses and current treatment. Counsel for both parties represented that it was

not the intention of this settlement to shift responsibility for future payment of claim-related

medical expenses to Medicare, but rather to consider and protect fully any rights or interests that

Medicare, Optum or any other Medicare Advantage Organization may have in this settlement. I

find that, based upon the evidence presented in open court and the representations of counsel

regarding the negotiation and establishment of the trust for the payment of any future Medicare

obligations, the parties have taken into consideration and accounted for the interests of Medicare

in this settlement.

All remaining settlement proceeds will be paid to Mr. Slack.

Having heard the evidence, I conclude that the settlement amount of $740,000.00

represents a fair compromise of the underlying matter in light of the risk of litigation and

available funds from which to recover. Further, I find that the parties have appropriately

accounted for the interests of the various lien holders, and specifically the interests of Medicare

with regard to potential future payments for medical care related to this accident.  Accordingly, I find that it is in the best interests of the plaintiff that the proposed compromise settlement set forth in the Virginia Release and Settlement Agreement (Dkt. No. 41-1) be approved and ratified.  Thus, I hereby **REPORT** and **RECOMMEND** that the proposed compromise settlement be approved and confirmed in all respects.

The clerk is directed to transmit the record in this case to the Honorable Jackson L. Kiser, United States District Judge, and to provide copies of this Report and Recommendation to counsel of record.  Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation within fourteen (14) days.  Any adjudication of fact or conclusion of law rendered herein by the undersigned that is not specifically objected to within the period prescribed by law may become conclusive upon the parties.  Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings, as well as to the conclusion reached by the undersigned, may be construed by any reviewing court as a waiver of such objection.

Enter:  May 15, 2014

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge